[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared in this matter. Counsel represented the plaintiff. The defendant appeared pro se. All statutory stays expired and the Court has jurisdiction.
Having heard all of the evidence in this matter and having given said evidence the weight that this Court deems appropriate, this Court finds as follows:
1. The parties to this action were married on October 2, 1988 in Middle Haddam, Connecticut.
2. The plaintiff resided in the state of Connecticut for at least one year next preceding the filing of this action.
3. There were two children born of the marriage: Dominic Sebastian DiMauro (February 23, 1989) and Stephanie Marie DiMauro (August 31, 1991).
4. The marriage has broken down irretrievably with no hope of reconciliation.
5. No state or municipal agency has contributed to the support or maintenance of either party or the children.
Evidence was introduced at the time of trial that although the parties purchased a home together, the defendant had the mortgage and the deed for the property placed solely in his own name. Upon the plaintiff wife discovering that the property was not in the name of both parties, a lawyer was hired and said property was then transferred to both individuals. The mortgage, however, was not refinanced and remained solely in the name of the defendant. This later became problematic for the parties for reason that a foreclosure action was later commenced concerning the property and the plaintiff did not receive any notice CT Page 4279 concerning delinquent payments until she was served by the mortgage company.
During the trial of this matter credible and believable evidence was introduced that during the course of the marriage the defendant used substantial funds to open and maintain a Charles Schwab account solely in his own name. The plaintiff did not have any control over said account. In June of 2001, the defendant withdrew twenty-three thousand dollars ($23,000.00) out of said account. He then gave eighteen thousand dollars to his brother for what he testified to be "safe keeping." He could not recollect with any specificity as to what happened with the remaining funds. Although he believes that he spent some on wedding gifts and clothes for his brother's wedding. The defendant further testified that all of the money has been spent and that he believes that it was used to maintain the marital household, however he did not offer any credible or convincing evidence that the money was used for this purpose. Furthermore he offered no credible or convincing evidence that he still does not have access to said money.
After hearing and seeing the evidence and assessing the credibility of the witnesses this Court comes to the conclusion that the money in the Charles Schwab Account is a marital asset that the defendant removed in order to place it out of the reach of the plaintiff wife.
The defendant in this matter appears to be in good health. He is a hard worker with a steady employment history. He is currently employed with a municipality, his benefits includes health insurance, life insurance and a pension. He earns approximately thirty-three thousand dollars ($33,000.00) a year.
The defendant's financial affidavit indicates that the bulk of his liabilities are four "loans" that he obtained from his father. Said loans total twenty-four thousand five hundred seventy dollars ($24,570.00). However, the defendant testified that said loans were not reduced to written instruments and that they have no repayment provisions. The defendant further testified that his father has not sought any repayment and that the defendant assumed that he would pay the amounts back should he eventually sell the marital residence. Based on the evidence submitted at trial this Court comes to the conclusion that the submissions are not loans but gifts from his father that the defendant may one day offer to return.
The Court notes that the defendant has a very good relationship with his children and cares for them very much. CT Page 4280
The plaintiff appears to be in good health. She was the primary care taker of the children during the course of the marriage of the parties. Due to this obligation her work history is not as strong as that of the defendant. She is currently employed as a hairdresser and works thirty (30) hours per week, earning nine dollars ($9.00) per hour. Her employment does not provide benefits such as health insurance, life insurance or a pension. She appears to be a hard worker who splits her time between her work and caring for the children.
Upon completing its consideration of the relevant evidence, the provisions of Connecticut General Statutes §§ 46b-62, 46b-81 and 46b-84, this Court enters judgment dissolving the marriage of the parties on the grounds of irretrievable breakdown with no hope for reconciliation.
The Court further orders as follows:
1. Motor Vehicles:
(a) The 1998 Pathfinder shall be the sole property of the plaintiff wife. She shall be responsible for the outstanding debt on said vehicle and shall hold the defendant husband harmless as to said vehicle.
(b) The 2001 Nissan Xterra shall be the property of the defendant Husband. He shall be solely responsible for the outstanding loan on said vehicle and shall hold the plaintiff wife harmless as to said vehicle.
(c) The 1987 VW Jetta shall be the sole property of the defendant husband.
(d) The 1982 VW Cabriolet shall be the sole property of the plaintiff wife.
2. Bank Accounts:
The parties shall equally divide the Charles Schwab account. The defendant shall pay the amount of eleven thousand five hundred dollars ($11,500.00) to the plaintiff representing one half (1/2) of the twenty-three thousand dollars ($23,000.00) withdraw by him from marital funds prior to the filing of the instant action.
3. Pension and Retirement Funds:
The defendant shall transfer to the plaintiff fifty percent (50%) of the value of his pension benefits with the City of Middletown Pension Plan. Said transfer shall be done by way of a Qualified Domestic CT Page 4281 Relations Order (QDRO).
 4. Real Estate
The parties shall continue to jointly own the marital home and the plaintiff shall have exclusive possession of the same until the first of the minor children attains the age of nineteen (19) years or graduates from high school, whichever occurs first. At said time the home shall be listed for sale, and sold for fair market value as of said time. Fair market value shall be determined by the comparable sales method. The parties shall share equally in the net proceeds of said sale.
The defendant husband shall immediately take measures to authorize the Mortgage Company and/or any other lien holders to release any and all information including, but not limited to, information regarding said mortgages, liens, escrows, or tax information to the plaintiff wife.
The plaintiff shall endeavor to refinance the family home as soon as it is financially practicable for her to do so.
Once the defendant husband has brought the current arrearage up to date as previously ordered by this Court, the plaintiff shall pay the mortgage, taxes, and insurance on said premises to the mortgagee, if escrowed or directly if not escrowed. The plaintiff shall hold the defendant harmless from any liability as to said mortgage, taxes and interest provided that the defendant husband is not in arrears on his support obligations.
The plaintiff shall have the benefit of the tax deductions for mortgage interest and real estate taxes.
The defendant husband shall pay fifty percent (50%) and the plaintiff wife shall pay fifty percent (50%) of the cost of any repairs to the home over one hundred and fifty dollars ($150.00). The wife shall solely pay for all repairs to the home that cost one hundred fifty dollars ($150.00) or less. Furthermore, the plaintiff wife shall endeavor to consult with the defendant husband before making any repairs with an estimated cost of five hundred dollars ($500.00) or more, unless said repair is of an emergency nature.
 5. Alimony
Applying the statutory criteria to the evidence, the court concludes that the plaintiff is in need of continued support by the defendant. The Court therefore orders support in the nature of rehabilitative alimony. CT Page 4282 The purpose of this support is to assist the plaintiff as she gains stable full time employment and increases her earning capacity. The alimony ordered is twenty-five dollars ($25.00) per week.
Alimony is to terminate upon the earliest of the following events: (a) the death of the plaintiff, (b) the death of the defendant, (c) the remarriage of the plaintiff, (d) cohabitation of the plaintiff as provided by statute, (e) April 1, 2011.
Said alimony shall be modifiable as to amount only and not modifiable as to term and is tax deductible by the defendant and tax inclusive as to the plaintiff.
The alimony shall be paid by a contingent wage execution.
 6. Child Custody and Support
(a) Custody
The plaintiff and defendant shall have joint legal custody of the minor children with the primary residence with the plaintiff subject to reasonable rights of visitation by the defendant father.
The parties shall use reasonable efforts to maintain free access and unhampered contact between the children and each of the parties and to foster a feeling of affection between the children and the other party. Neither party shall do anything which may estrange the children from the other party or injure the children's opinion as to his/her mother or father or which may hamper the free and natural development of the child's love and respect for the other party.
(b) Child Support
The defendant shall pay to the plaintiff by an immediate wage execution, child support in the amount of one hundred sixty-seven dollars ($167.00) per week, which appears to be in conformity with the guideline worksheet.
 7. Tax Exemptions
Each party shall be entitled to claim one of the minor children as exemptions for federal and state tax purposes. In the event that one of the children becomes ineligible for the parties to take a tax exemption, the parties shall alternate taking the remaining child as a tax exemption with the defendant husband receiving the exemption in the first year. CT Page 4283
The parties shall file a joint federal and state tax return for the year of 2002 and shall equally share in any refund.
 8. College Expenses
The court shall retain jurisdiction over the issue of parental contribution toward the cost of college education for the minor children pursuant to Connecticut statutes.
 9. Medical and Dental Insurance
The defendant husband shall provide health and dental insurance for the minor children.
As to unreimbursed medical expenses as concerns the minor children, each party shall be responsible for one-half (1/2) of any unpaid or unreimbursed medical, dental, psychological or psychiatric, or similar expenses for the minor children.
The defendant husband shall pay one-half (1/2) of the cost of COBRA coverage for the plaintiff wife until she is able to obtain her own health insurance coverage through her employment or a private health insurer or for the full COBRA period, whichever is shorter. The plaintiff wife shall pay the remaining one-half (1/2) of said COBRA costs.
10. Life Insurance
The defendant husband shall name the minor children as irrevocable beneficiaries on the life insurance policy available through his employment until such time as his child support obligation terminates.
11. Marital Debts
Each party shall be responsible for the debts listed on their respective financial affidavits and shall hold each other harmless therefrom. However, the Court finds the following debts listed on the plaintiff's financial affidavit are actually joint debts: J.C. Penney, Sears, Aspire Visa, Capital One, Providian Visa and Ricardos Music charge. The Court therefore orders that the defendant husband shall be responsible for paying one-half (1/2) of said debts.
12. Pets
Each party shall be solely responsible for the pets in their individual CT Page 4284 households.
13. Attorneys Fees
The evidence and the provisions of § 46b-62 C.G.S. persuade the court that the defendant should make a substantial contribution towards the plaintiff's attorneys fees. The defendant husband shall therefore pay one thousand two hundred fifty dollars ($1,250.00) towards the attorneys fees incurred by the plaintiff wife within sixty (60) days of the date of this order.
 Richard Allan Robinson, J. March 28, 2003
CT Page 4285